UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| TERESA ANN HARRIS,<br>  *Plaintiff*,<br><br>  v.<br><br>ALEJANDRO MAYORKAS, Secretary of<br>Homeland Security, *et al.*,<br>  *Defendants*. | Case No. 1:22-cv-670 (MSN/IDD) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. No. 50). For the reasons set forth below, that motion will be granted.

**I. BACKGROUND**

 **A. Factual Background**

Plaintiff Teresa Ann Harris, a Black woman, alleges that Defendants Alejandro Mayorkas and the Department of Homeland Security's Office of Biometric Identity Management ("DHS") engaged in discrimination and created a hostile work environment based on her race and sex. Her claims arise out of incidents that occurred between October 2014 and April 2020. *See* Dkt. No. 45 at 1–2. ("Am. Compl."). Those claims, however, were initially raised in two separate EEO proceedings. Her First EEO Charge covers events that occurred between 2014 and 2018. Her Second EEO Charge covers events that took place between 2019 and 2020.

The Court starts by briefly discussing Plaintiff's allegations here. Plaintiff's First EEO Charge was filed on April 11, 2018, and asserted the following acts of alleged discrimination:

> (1) Beginning in October 2014, Plaintiff was "not provided with the tools necessary to perform [her] job or allowed to do the job of the Budget Manager";

1

    (2) On seven occasions in October 2017, Plaintiff's supervisor "refused to sign off" on certifications for which Plaintiff claimed she was qualified;

    (3) In August 2017, a supervisor adjusted Plaintiff's work schedule (to begin at 9:00 a.m. instead of 9:30 a.m.);

    (4) In October and December 2017, a supervisor required Plaintiff to email him daily upon her arrival to the office; and

    (5) On multiple occasions between November 2016 and April 2018, a supervisor "belittled and disrespected [Plaintiff] in front of her peers and contractors."

Plaintiff also asserted that, together, those acts of discrimination created a hostile work environment. After reviewing those allegations, an Administrative Judge rejected those claims due to Plaintiff's failure to provide sufficient evidence, and the agency adopted that decision.

Then, because she maintains that the issues at her workplace were not resolved after she filed her First EEO Charge, Plaintiff filed her Second EEO Charge on December 5, 2019, and later amended that complaint to include allegations about intervening events. *Id*. at 5–6. Her Second EEO Charge included additional claims of discrimination that occurred between 2019 and 2020. *Id.* at 9. In its final form, Plaintiff's Second EEO Charge claimed that:

    (1) On August 13, 2019, two supervisors refused to sign-off on Plaintiff's certification;

    (2) On August 13, 2019, a supervisor (and fellow Black woman) remarked that "you need to control your emotions, you know that as Black women we have to do more and prove ourselves more than others";

    (3) On September 4, 2019, a supervisor humiliated Plaintiff and damaged her reputation when, referring to Plaintiff, he whispered that "you knew she was going to fail; she always fails";

    (4) On October 18, 2019, a supervisor suspended Plaintiff for five days;

    (5) On October 31, 2019, a supervisor changed Plaintiff's position description by removing budget duties for which she was hired and replaced them with new ones;

(6) On November 7, 2019, a supervisor changed Plaintiff's previously submitted Performance Work Plan to include different duties;

(7) On December 12, 2019, a supervisor issued Plaintiff a Letter of Reprimand; and

(8) On February 14, 2020, one supervisor suspended Plaintiff for fourteen days (though, a different supervisor later shortened the suspension to ten days).

Though loosely organized, the claims made in Plaintiff's Amended Complaint are based on the allegations found in both of those administrative charges.

### B.  Procedural History

Plaintiff filed her original Complaint in the U.S. District Court for the District of Columbia on October 22, 2021. *See* Dkt. 1. The Complaint raised claims of (1) discrimination based on her sex and race, and (2) a hostile work environment based on her sex and race. *Id.* On July 15, 2022, the case was transferred to this Court on Defendants' motion. Dkt. No. 16. Once in this Court, Defendants sought to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No 29. Plaintiff then sought leave to amend her Complaint to include additional claims. Dkt. No. 32 at 12–14. The Court granted that motion, and Plaintiff's Amended Complaint was docketed on August 22, 2022. *See* Dkt. No. 45.

On September 12, 2022, Defendants again moved to dismiss Plaintiff's claims. *See* Dkt. No. 50. Defendants argue that, despite the new factual allegations, Plaintiff's Amended Complaint still does not state a claim for relief. Dkt. No. 51 at 7. Plaintiff opposed that motion on October 27. *See* Dkt. No. 56. Defendants replied on November 8. *See* Dkt. No. 59. Plaintiff then filed a "Reply to Defendants' Reply" on November 14. *See* Dkt. No. 60.[1] The Court will now grant that motion.

---

[1] The Court will construe this pleading as a sur-reply, and because accepting sur-replies is discretionary, a Motion for Leave to File a Sur-Reply. The Court notes that such motions are viewed with disfavor in the Eastern District of Virginia. *See* Loc. R. 7(F)(1) (E.D. Va. 2023). However—because of Plaintiff's status as a *pro se* litigant and because the Court has read and considered the document—the Court will grant that motion.

## II.    LEGAL STANDARD

The Court may grant a motion to dismiss under the Federal Rules of Civil Procedure when a complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A plaintiff must make more than bald accusations or mere speculation: "naked assertions devoid of further factual enhancement" or "formulaic recitation[s] of the elements of a cause of action" are insufficient under Rule 12(b)(6). *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

It is also important to note that, when considering a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). Moreover, a complaint filed by a *pro se* plaintiff is to be liberally construed. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). That said, the Court's "task is not to discern the unexpressed intent of the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). Nor does the liberal construction standard excuse a clear failure in the pleadings to allege a federally cognizable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

## III.    DISCUSSION

Defendants argue that Plaintiff's claims should be dismissed for three reasons. *First*, Defendants argue that most of Plaintiff's claims arising from her First EEO Charge (addressing events from 2014–2018) should be dismissed because Plaintiff failed to timely file them, and that Plaintiff's remaining claim in her First EEO Charge fails to allege non-conclusory facts that would

4

enable her case to proceed past the dismissal stage. Dkt. No. 51 at 8–12. *Second*, Defendants argue that Plaintiff's remaining claims arising from her Second EEO Charge (addressing events from 2019–2020) also fail to allege non-conclusory facts that allow her suit to proceed. *Id.* at 11–18. *Third*, Defendants also argue that Plaintiff fails to adequately plead facts to support her hostile work environment claim. *Id.* at 18–28. The Court agrees on all counts.

### A.  Plaintiff's Untimely Discrimination Claims

It is axiomatic that a Title VII plaintiff must exhaust their administrative remedies before filing suit in federal court. *Stewart v. Iancu*, 912 F.3d 693, 698–99 (4th Cir. 2019). Indeed, when a plaintiff (like Ms. Harris) is alleging discriminatory treatment based on discrete acts, those claims will not be deemed to have been exhausted—and thus cannot be brought in federal court—unless the plaintiff brings those incidents to the attention of the EEO within 45 days.  *See* C.F.R. § 1614.105(a)(1). This requirement ensures that claims are investigated while the plaintiff's memory of the incident is still fresh and promptly informs the offending agency of a potential violation. *See Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593–94. (4th Cir. 2012); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). Thus, a plaintiff's failure to meet the 45-day deadline will (in most cases) foreclose the success of her discrimination suit against the federal government. *See Figueroa-Ibarry v. Rennick*, No. 1:20-cv-0023, 2021 WL 954843, at *4 (E.D. Va. Mar. 12, 2021).

Here, Plaintiff approached an EEO counselor for the first time on April 11, 2018. Dkt. No. 51 at 10. So, at the time of her initial contact with the counselor, Plaintiff could raise only alleged discriminatory acts that occurred within the 45-day window leading up to that date—specifically, Harris could allege only discriminatory acts that occurred between February 25 and April 11 of that year. All but one of the claims in Plaintiff's First EEO Charge fall outside of that window. *See* Am. Compl. at 1. Those claims will therefore be dismissed. And, while timely, that lone

allegation—her supervisor publicly "belittl[ing] and disrespect[ing]" her (which Plaintiff alleges damaged her reputation with her coworkers, *see* Am. Compl. at 1, 4–5—will nonetheless be dismissed for the same reasons as the other timely allegations discussed below.[2]

### B. Plaintiff's Timely Discrimination Claims

Though timely, Plaintiff's other discrimination claims must also be dismissed. To survive a motion to dismiss, a plaintiff's complaint must provide non-conclusory allegations that push their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *see also Swaso v. Onslow Cnty. Bd. of Educ.*, 698 Fed. App'x 745, 747 (4th Cir. 2017) ("[A] Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*."). But while a Title VII plaintiff need not explicitly make out a *prima facie* case of discrimination in their complaint, they must plead facts that would allow the court to find that: (1) they are a member of a protected class; (2) they satisfactorily performed their job; (3) they faced an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination. *Swaso*, 698 Fed. App'x at 747.

Here, even assuming Plaintiff had adequately alleged facts that satisfied the first three elements of that inquiry, her claims would still fail because she has not sufficiently tied the alleged harassment to her protected status. *Cf.* 42 U.S.C. § 2000e-2(a)(1) (prohibiting only discriminatory conduct that is *based on* a person's protected status). Indeed, the only alleged incident that could reasonably be linked to Plaintiff's protected characteristics is a comment from a supervisor who

---

[2] Many of the alleged discriminatory acts that occurred between 2014 and 2018 (the period relevant to Plaintiff's First EEO Complaint) are also incognizable for another reason. Plaintiff's First EEO Complaint identifies only race as a possible basis of her discrimination; but, in this Court, she relies on those same facts to assert claims based on *race and sex*. That shift matters: Under Fourth Circuit law, a plaintiff alleging discrimination must choose a basis of discrimination in her administrative charge and stick with that choice when they initiate formal litigation. *See Chacko*, 429 F.3d at 509 ("[T]he plaintiff's claim generally will be barred if [their] charge alleges discrimination on one basis— such as race—and [they] introduces another basis in formal litigation—such as sex."). Thus, because her administrative charge "referenced different . . . discriminatory conduct" than does her civil complaint, Plaintiff's sex-based-discrimination claims from this period must be dismissed for that reason as well. *Sydnor*, 681 F.3d at 593–94.

told her to "control [her] emotions" because, as Black women, they had to "prove [themselves]." Am. Compl. at 9. Not only has Plaintiff failed to show how that comment was the product of some discriminatory animus; but—because, standing alone, that innocuous comment is insufficient to support the inference that the rest of Plaintiff's negative experiences were based on her race or sex (or both)[3]—the rest of Plaintiff's claims must also be rejected. *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d at 588. For sure, in the context of a Title VII claim, the Fourth Circuit has emphasized that mere speculation about the cause of a plaintiff's alleged mistreatment does not establish a plausible claim to relief. *Id.* Were the rule otherwise, "any qualified member of a protected class who alleges nothing more than that she was denied a position or promotion in favor of someone outside her protected class would be able to survive a Rule 12(b)(6) motion." *Id.* Title VII does not compel such a result.

### C. Plaintiff's Hostile Work Environment Claim

Plaintiff's hostile work environment claim will also be dismissed. To show a hostile work environment, Plaintiff was required to allege conduct that was (1) unwelcomed; (2) based on her membership in a protected class; (3) "sufficiently severe or pervasive to alter the conditions of her

---

[3]Intersectional plaintiffs that have more than one protected status may face unique challenges both in the workplace and in the courtroom. For that reason, judges and scholars alike have embraced the notion that the law should consider a plaintiff's full identity when determining whether workplace conduct was discriminatory. *See Lam v. University of Hawaii*, 40 F.3d 1551 (9th Cir. 1994) (holding that—because a person's identity "cannot be neatly reduced to distinct components"—"the attempt to bisect a person's identity at the intersection of race and gender often distorts or ignores the particular nature of their experiences"); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 326 (D. Md. 2003) ("Like other composite classes under Title VII, African-American women are subject to stereotypes and assumptions shared neither by African-American males nor by Caucasian females. Consequently, they may suffer a distinct, but no less invidious, discrimination."); *Westmoreland v. Prince George's Cnty.*, 876 F. Supp. 2d 594, 603–04 (D. Md. 2012) (treating a plaintiff's sex and racial discrimination claims "in tandem" because the plaintiff was discriminated against "as an African American female"); *see also* Peggie R. Smith, *Separate Identities: Black Women, Work, and Title VII*, 14 Harv. Women's L.J. 21 (1991) (emphasizing the need to examine African American women's claims of "interactive" race-and-gender discrimination within a socio-historical framework); Kufere Laing, *Interpreting the People's Constitution*, 65 How. L.J. 533, 557–67 (2022) (setting out an interpretive framework for Title VII claims that considers the unique experiences of Black women and other intersectional plaintiffs).

But, again, because Plaintiff's Amended Complaint fails to connect her treatment to her protected statuses (either together or apart), her claims will nonetheless be dismissed.

employment;" and (4) "imputable to her employer." *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009) (cleaned up). Most relevant here, a plaintiff must allege facts showing that her workplace was "permeated with discriminatory intimidation, ridicule, and insult" to satisfy the third element. *Pueschel*, 577 F.3d at 565 (citation omitted). And factors relevant to the "severe or pervasive" inquiry include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *E.E.O.C. v. Sunbelt Rentals*, 521 F.3d 306, 315 (4th Cir. 2008).

Plaintiff fails to provide any such evidence here. In her Amended Complaint, Plaintiff relies heavily on a handful of statements made by her supervisor, suggesting to other employees that Plaintiff's "calculations and work products were incorrect," which "made [Plaintiff] look like a bad employee" and caused her to be "ostracized" from her coworkers. Am. Compl. at 1, 6. Plaintiff also contends that her managers made other slights against her—including declining to accept her work-related ideas, failing to provide her with resources, restricting her communications, reassigning her work to other employees, altering her work schedule, and requiring her to confirm when she arrived at work. *Id.* at 2–8.

Those allegations, however, fall well short of the "steep" hill plaintiffs must climb to establish a hostile work environment. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019). Indeed, "[e]valuation and criticism of one's work performance, while perhaps unpleasant, is not abusive." *Holloway v. Maryland*, 32 F.4th 293, 301 (4th Cir. 2022); *see also Short v. Berryhill*, No. 18-cv-2714, 2019 WL 4643806, at *17  (finding that "negative job evaluations and curt, annoying, bothersome emails from plaintiff's supervisor" did not constitute severe or pervasive conduct). This is true even when a supervisor delivers feedback in an unpleasant or rude manner.

*See, e.g., Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (holding that "mockingly yelling," "repeatedly harping on a mistake," and "making snide comments" was not severe or pervasive conduct (cleaned up)).

The Court does not doubt that Plaintiff's work environment was subjectively unpleasant, however Fourth Circuit law is clear: "Workplaces are not always harmonious locales." *Sunbelt Rentals*, 521 F.3d at 315. Thus, because Plaintiff has failed to allege facts that suggest that DHS was permeated with the kind of discrimination and ridicule that Title VII was intended to address, her hostile work environment claim must be dismissed.

*     *     *

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 50) is **GRANTED**; it is further

**ORDERED** that Plaintiff's Motion for Extension to File Evidence (Dkt. No. 61) is **DENIED AS MOOT**; and it is further

**ORDERED** that this case is **DISMISSED**.

The Clerk is directed to send a copy of this Order to the *pro se* Plaintiff. Should Plaintiff wish to appeal this Order, she must file a written notice of appeal with the Clerk of this Court within sixty (60) days of the date of the entry of this Order. A notice of appeal is a short, written statement noting a desire to appeal an order. Failure to file a notice of appeal within the stated period waives Plaintiff's right to do so

**SO ORDERED.**

/s/
_____
Hon. Michael S. Nachmanoff
United States District Judge

July 27, 2023
Alexandria, Virginia